1
2
3
4
5
6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

7  MICHAEL A. RICHARDSON and SAMMYE )   CV-F-98-5393 OWW DLB
   A. RICHARDSON,                   )
8                                   )   MEMORANDUM DECISION AND
                   Plaintiffs,      )   ORDER DENYING MICHAEL AND
9                                   )   SAMMYE RICHARDSON'S MOTION
        v.                          )   FOR RELIEF FROM FINAL
10                                  )   JUDGMENT PURSUANT TO FED.
   FIRST AMERICAN TITLE INSURANCE   )   R. CIV. P. 60(b)(6) (Doc.
11 COMPANY, a corporation; NANCY    )   1509)
   WALSH, an individual,            )
12                                  )
                   Defendants.      )
13 _____)

14
15
16

I.   INTRODUCTION

17
18     Michael A. Richardson and Sammye A. Richardson ("the

19 Richardsons") move under Federal Rule of Civil Procedure

20 60(b)(6), for relief from this court's final judgment entered

21 following the verdicts of the jury on March 5, 2002.  (Doc. 1509,

22 filed August 13, 2004); *see also* the Richardsons' "Lodged

23 Motion", lodged July 12, 2004.  First American Title Insurance

24 Co. and Nancy Walsh oppose as well as Juliann Sanchez  *See* Docs.

25 1512-1513, filed Aug. 24, 2004.[1]

26 _____

27     [1]On May 25, 2004, the Richardsons filed a Rule 60(b) motion
   with the Ninth Circuit Court of Appeals, Appeal Docket Number 04-
28 16129.  *See* Docs. 1495, 1500).  The Ninth Circuit dismissed the

1

1

2                    II.   <u>PROCEDURAL AND FACTUAL HISTORY</u>

3          This case has a lengthy procedural and factual history,

4     dating from 1998 and spanning over sixteen hundred filed court

5     documents.   The Richardsons were represented in this litigation

6     by eight different law firms at different times.   During the jury

7     trial and in some of the post-trial motions the Richardsons

8     represented themselves.   A number of investors, who provided

9     monies to the Richardsons, were separately represented by Michael

10    Whittington.   Juliann Sanchez was represented by the law firm,

11    Caswell, Bell & Hillison.   Ms. Sanchez is a wheelchair-bound

12    paraplegic, who was injured in an automobile accident which

13    caused her disability.   Ms.  Sanchez gave the Richardsons over

14    $300,000 from her accident settlement proceeds to invest. The

15    Richardsons never repaid her.

16          A. <u>Trial Proceedings</u>.

17          A defense verdict against the Richardsons on every one of

18    the Richardsons' claims was returned following a thirty-four day

19    jury trial, which began on August 28, 2001 and ended November 1,

20    2001.  (Doc. 1120).  The jury found for Ms. Sanchez on her claims

21    against the Richardsons for common law fraud, securities fraud,

22

23    ─────────────────────

      Richardsons' Rule 60(b) motion for lack of jurisdiction on
24    October 24, 2004 and denied their petition for en banc review
      under writ of mandamus and their motion to re-open on January 26,
25    2006.
             The Richardsons assert in various papers that this motion
26    should be granted by default against those parties who failed to
      file a written opposition to the motion.   The Richardsons'
27    contention is without merit; this motion will be resolved on the
      merits.
28

and other claims, and awarded Ms. Sanchez $360,000 in

compensatory damages plus $500,000 in punitive damages each,

against Michael Richardson and Sammye Richardson.  After the jury

reached its verdict, the following motions were brought and

denied: (1) the Richardsons' motion to strike motion for new

trial; (2) the Richardsons' motion for leave of court to file

complaints against named parties; (3) the Richardsons' motion for

new trial based on evidentiary objection; and (4) the

Richardsons' motion for new trial based on excessive compensatory

damages. *See* Doc. 1166, filed February, 13, 2002.  After the

jury reached its verdict, the following motions were brought and

granted or conditionally granted: (1) motion for judgment as a

matter of law as to the fiduciary duty claim; and (2) the

Richardsons' motion for a new trial based on the sole issue of

excessive punitive damages. *Id*.  On March 5, 2002, a Final

Judgment on Verdicts of Trial Jury (Judgment) was entered.  (Doc.

1168).   The Judgment states in pertinent part:

>   This case was tried before a jury over the
>   period August 23, 2001 to November 1, 2001.
>
>   ...
>
>   On October 23, 2001 the jury found the
>   attached special verdicts, marked Ex. A.
>   incorporated by this reference, in favor of
>   defendants, First American Title Insurance
>   Company and Nancy Walsh, and against all
>   plaintiffs on all plaintiffs' claims, except
>   the claim for breach of fiduciary duty.  The
>   jury was unable to agree upon a unanimous
>   verdict on the breach of fiduciary duty claim
>   and a mistrial was declared only on that
>   claim.  The jury also returned verdicts in
>   favor of Plaintiff, Juliann Sanchez, against
>   Michael and Sammye Richardson on all Ms.
>   Sanchez's claims.  On November 1, 2001, the
>   jury returned the attached verdicts marked
>   Ex. B., incorporated by this reference, for

3

Juliann Sanchez, awarding $360,000 in
compensatory damages against Michael
Richardson and Sammye Richardson and $500,000
in punitive damages against Michael
Richardson and $500,000 in punitive damages
against Sammye Richardson for a total of
$1,000,000 in punitive damages.

By separate written statement of decision
filed February 13, 2002, defendants First
American Title and Nancy Walsh's renewed
motion for judgment as a matter of law was
granted as to the mistried fiduciary duty
claim.  Michael and Sammye Richardson's
motion for a new trial was denied on all
grounds except one; a motion for new trial
was conditionally granted on the sole issue
of the claim of excessive punitive damages,
unless Juliann Sanchez accepted a remitti
[sic] in punitive damages to $200,000 against
Sammye Richardson and $160,000 against
Michael Richardson.  Juliann Sanchez accepted
the remittitur [sic] by written acceptance
filed February 22, 2002.

Based on the verdicts of the jury and the
court's ruling on defendants' motion for
judgment as a matter of law on the breach of
fiduciary duty claim; IT IS ORDERED, JUDGMENT
is entered in favor of the defendants, First
American Title Company and Nancy Walsh, and
against all plaintiffs on all plaintiffs'
claims.

FURTHER ORDERED:

JUDGMENT IS ENTERED in favor of Juliann
Sanchez and against Michael Richardson and
Sammye Richardson.  Juliann Sanchez shall
recover from Michael Richardson and Sammye
Richardson:

        1.  Compensatory damages in the
        amount of $360,000.00;

        2.  Punitive damages from Michael
        Richardson of $160,000.00; and

        3.  Punitive damages from Sammye
        Richardson of $200,000.00.

FURTHER ORDERED:

Defendants, First American Title Company and
Nancy Walsh, shall recover their costs of

4

> suit from and against all plaintiffs, in
> accordance with Local Rule 54-292.
>
> Juliann Sanchez shall recover her costs of
> suit against from [sic] and against Michael
> and Sammye Richardson in accordance with
> Local Rule 54-292.

The Richardsons filed a Notice of Appeal on March 5, 2002 (Doc. 1169).  The Ninth Circuit assigned the appeal case number 02-15454 (Doc. 1173).  The Richardsons' appeal from the Final Judgment was dismissed by the Ninth Circuit for failure to file an opening brief on December 2, 2002 (Doc. 1332).

Three separate petitions for certiorari to review the Ninth Circuit's dismissal of the Richardsons' appeal from the Final Judgment were then filed by the Richardsons in the United States Supreme Court: *Richard Sanders, et al. v. First American Title Ins. Co., et al.,* Case No. 03-294; *Sammye A. Richardson v. First American Title Ins. Co., et al.*, Case No. 03-5619; and *Michael Richardson v. First American Title Ins. Co., et al.*, Case No. 03-7128.  The Supreme Court denied Richard Sanders' petition and Sammye A. Richardson's petition on November 8, 2003.  Michael Richardson's petition was denied on January 12, 2004.  Sammye Richardson's petition for rehearing was denied January 26, 2004 and Michael Richardson's petition for rehearing was denied on March 8, 2004.

### B. Bankruptcy Proceedings.

On August 9, 2001, Sammye Richardson dba Rock of Gibralter LLC filed a voluntary petition pursuant to Chapter 13 in the United States Bankruptcy Court for the Eastern District of California, Case No. 01-17521-A-13.  Juliann Sanchez's motion for relief from the automatic stay was granted by Order filed on

August 14, 2001.  By Order filed on January 14, 2002, the trustee's motion to dismiss the Chapter 13 case was granted and Sammye Richardson's motion to convert the Chapter 13 case to a Chapter 11 case was denied.  Although Sammye Richardson filed a Notice of Appeal to the Ninth Circuit Bankruptcy Appellate Panel, she subsequently moved to dismiss that appeal.  By Order filed on March 8, 2002, the BAP dismissed the appeal for failure to prosecute.  On July 9, 2003, an Order to close the bankruptcy case was entered and that case was closed.

On January 17, 2002, Sammye Richardson dba MR Investments and Sammye Richardson filed a voluntary petition pursuant to Chapter 11 in the United States Bankruptcy Court for the Eastern District of California, Case No. 02-10465.  By Order filed on March 29, 2002, the Chapter 11 case was converted to a Chapter 7 case.  By Minute Order filed on April 24, 2002, Juliann Sanchez's motion for relief from the automatic stay was granted. By Order filed on June 1, 2005, the discharge of Sammye Richardson was denied in her Chapter 7 case. Following the order denying Sammye Richardson's discharge, voluminous proceedings occurred in this bankruptcy, including the filing by Sammye Richardson and Michael Richardson of several interlocutory appeals, all of which were ultimately dismissed for various reasons, including the failure to comply with court orders. Eventually, the Bankruptcy Court declared the Richardsons to be vexatious litigants and sanctioned them approximately $30,000. This bankruptcy was closed on October 26, 2007.

On January 18, 2002, Michael Richardson filed a voluntary petition pursuant to Chapter 11 in the United States Bankruptcy

Court for the Eastern District of California, Case No. 02-10810. By Order filed on March 29, 2002, the Chapter 11 case was converted to a Chapter 7 case.  On April 30, 2002, Juliann Sanchez's motion for relief from the automatic stay was granted. By Order filed on June 1, 2005, the discharge of Michael Richardson in the Chapter 7 case was denied.

Since the entry of judgment in this case on March 5, 2002, the Richardsons have filed scores of documents, which are largely unintelligible, making groundless accusations against judicial officers of the Circuit, District, and Bankruptcy Courts.  The Richardsons refuse to follow orders limiting their prolix filings and have vexatiously multiplied the proceedings in the District and Bankruptcy Courts.

### C.   Rule 60(b) Motion.

On August 13, 2004, the Richardsons filed their motion in this case for relief from judgment pursuant to Rule 60(b)(6). The Richardsons claim as a basis for relief, a "writing" by Mr. Chambers, which they allege "was highly prejudicial[,] which was never admitted in evidence[, and] which ended upon in the jury room."  The Richardsons' Motion at 1:23-24.  The Richardsons allege that this letter was given to the jury, that "[t]he jury should never have seen this note[,] and [that] it was a travesty of justice that they saw it."  *Id.* at 2:13-14.  On the basis of their claim this letter was allegedly given to the jury, the Richardsons seek relief from final judgment.

An evidentiary hearing in connection with the Richardsons' motion for relief from judgment was conducted on September 13, 2004.  Courtroom Deputy Clerk Greg Lucas testified.  Mr. Lucas at

that time had approximately 29 years experience as a court clerk for the Eastern District of California (Fresno) and seven years experience as the Courtroom Deputy Clerk for Judge Wanger.  Mr. Lucas testified that he had never seen the letter; that the letter was not a trial exhibit; the letter was not received in evidence; and that the letter was never given to the jury, as he is the only clerk or person who gave exhibits to the jury and only duly marked with exhibit tabs and received in evidence and recorded on Court minutes of trial are allowed to be provided to the jury during deliberations.  Thereafter, the Richardsons submitted a number of documents in which they asserted their belief that the letter at issue was delivered to the jury during the trial or deliberations by attorney Brian Cuttone (Docs. 1516-1522).

By Order filed on October 12, 2004 (Doc. 1527), an evidentiary hearing was ordered in which Mr. Cuttone was to present testimony or evidence of his knowledge of the disputed letter.  The October 12, 2004 Order provided:

> No other issues shall be presented or discussed, as the August 13, 2004, motion for reconsideration [sic] has been submitted for decision and there is no cause for re-opening or entertaining further legal argument concerning that motion which has been fully briefed, argued by the parties, and considered by the court.

The second evidentiary hearing was conducted on January 20, 2005 at which attorneys Brian Cuttone and Robert Werth testified. Both attorneys denied any association with the letter and denied that either ever provided the letter to the jury.  At the conclusion of the January 20, 2005 hearing, Mr. Cuttone was

ordered to file his unredacted billing records under seal, which Mr. Cuttone did on February 3, 2005.  (Doc. 1565).  The evidentiary hearing was continued to March 18, 2005 for the Richardsons to subpoena additional witnesses in support of their Rule 60(b) motion.

The Richardsons then filed a number of documents:

> **Doc. 1567**: Filed on February 2, 2005 and captioned "Notice of Failure to comply with Rules of appearance pursuant to United States District Court, Eastern District Court, Local Rules 83-182 (a)(1)(2); or 83-182(h) or 83-182(i), by Brian Cuttone Robert Werth and the 'greasy haired attorney name unknown for failure to enter appearance on the record prior to making an appearance is cause for Plaintiff to demand court Order all objections expunged among other remedies."

> **Doc. 1568**: Filed on February 7, 2005 and captioned "Opposition to the use of 'Professional services in attached *January 25, 2005, Dear Judge Wanger* letter is made pursuant to *Local Rule 39-141(g)*.  And related pleadings filed separately with request to court to confirm date of such hearing without further delay."

> **Doc. 1570**: Filed on February 7, 2005 and captioned "Request to Court to Reset Plaintiff Pleading docketed on January 21, 2005, Document Titled, '*Petition Court to stay destruction of all exhibits, videos, and Tapes due to ongoing evidentiary matters and formal request to claim all Plaintiff exhibits per courts own ruling on the record during trial.*'"

> **Doc. 1571**: Filed on February 7, 2005 and captioned "Request to Court to Confirm date, and scope of evidentiary hearing."

> **Doc. 1572**: Filed on February 7, 2005 and captioned "ORIGINAL FILED JANUARY 19, 2005 CORRRECTED FILING FEBRUARY 1, 2005. PETITIONER ADDRESSES THE SETTING OF EVIDENTIARY HEARING AGAINST FIRST AMERICAN TITLE CORP. 'FATCO' WITH REQUEST TO COURT TO TAKE JUDICIAL NOTICE PURSUANT TO *Rule 60(b), Rule 59(a)(2), (c)* AND THE '*Doctrine of*

9

1
2
3

*Unclean Hands'* AND VACATE OR NULLIFY 'FATCO'
IMPOSED ABSTRACT OF JUDGMENT AND 'FATCO's'
ALTERED ASSIGNMENT OF CLAIMS WHEN ALL
UNSECURED CLAIMS OF 'FATCO' AGAINST
RICHARDSONS AMOUNT TO FACTS NOT IN
EVIDENCE."[2]

4
5

By Order filed on March 10, 2005, (Doc. 1574), the following
was ordered, among other things:

6
7
8
9
10
11

Multiple documents requesting judicial notice
have been filed and issues raised regarding a
subpoena to Michael Whittington.  A motion to
enforce that subpoena has not been properly
noticed and set for hearing.  Other
'preliminary matters' which plaintiffs refer
to seek relief not available except through
properly noticed motion and calendared
hearings.  Some of the issues are beyond the
scope of the evidentiary hearing.

12
13
14
15

A jury trial in another case, which had been
regularly set in this court before the March
18, 2005, hearing date was requested by the
plaintiffs, will be in progress on March 18,
2005.  It is necessary that a firm date be
established for completion of the evidentiary
hearing on the letter in issue in this
proceeding.

16
17
18
19

Plaintiffs shall advise the Court how much
time is required to complete the evidentiary
hearing now in progress.  Plaintiff shall
submit three alternate dates on which they
can complete their presentation of evidence.
A firm court date will be set for the
conclusion of the hearing.

20
21
22
23
24
25
26

Plaintiffs have also stated that they will
not have witnesses present on March 18, 2005.
Many other matters are raised in the February
17, 2005, papers.  Such matters cannot be
addressed in their present form and some
subjects are raised that are unrelated to the
hearing in progress.  Plaintiffs are
responsible for correctly subpoenaing
witnesses in accordance with the requirements
of law.

On April 4, 2005, the Richardsons filed a pleading

27
28

[2]Doc. 1572 is described on the docket as "REQUEST FOR
Judicial Notice by Michael A. Richardson, Sammye A. Richardson."

captioned:

> First Amended Notice of Petition for Writ of
> Mandamus to demand court to address the
> 'Request to Court to Confirm date, and scope
> of evidentiary hearings' inclusive of the
> eight preliminary matters.

(Doc. 1578).

On April 27, 2005, the Richardsons filed a pleading

captioned:

> Notice of Motion to set aside March 5, 2002
> Judgment in light of de novo supporting
> evidence verifying allegations listed in the
> original docketing statement, which caused
> Ninth Circuit to grant the Rule 60(b)
> evidentiary hearing.

(Doc. 1580).[3]

By Order filed on May 26, 2005, the Court ruled:

> The Court has received a number of filings
> from Plaintiffs purporting to notice for
> hearing June 20, 2005, at 9:00 a.m. what
> Plaintiffs describe as 'A Motion for Summary
> Judgment or in the Alternative Summary
> Adjudication to Vacate the March 2, 2002
> Judgment and all post-March 5, 2002,
> Memorandums and Orders inclusive of Abstracts
> Related to Bill of Court Costs, Exhibits on
> May 12, 2005 Docket.'

> Presently pending before the Court is the
> rule 60(b) motion of the Plaintiffs
> concerning an alleged letter that Plaintiffs
> contend was viewed by the jury.

> The hearing on June 20, 2005, will go forward

---

[3]Docs. 1581, 1582, 1583, 1584, and 1587 appear to be motions
for summary judgment filed by the Richardsons.  To the extent
these pleadings are comprehensible, they purport to collaterally
attack the Final Judgment in this action based on lack of
jurisdiction as well as unsubstantiated accusations of a kickback
scheme and judicial and attorney misconduct and seek transfer of
this action to the United States District Court for the District
of Arizona.  The time for summary judgment motions in this case
is long past and these pleadings are disregarded.

1
2
3

> at 9:00 a.m. to complete the hearing in the
> Rule 60(b) motion.  At that time Plaintiffs
> may present any other witnesses they have
> concerning their pending motion under Rule
> 60(b).  At that time, the motion will be
> finally concluded.

4
5
6

> Any response to the pending motion shall be
> filed on or before June 8, 2005.  Thereafter,
> no further papers shall be filed in
> connection with the pending motion without
> further order of the Court.

7
8

On June 17, 2008, the Richardsons filed a Notice of Appeal

appeal to the Ninth Circuit:

9
10
11
12
13
14
15

> NOTICE OF APPEAL BASED ON LACK OF
> JURISDICTION OF THE DISTRICT COURT TO HEAR
> EVIDENTIARY MOTIONS UNDER FRCP 60(B) IN LIGHT
> OF THE FORTHCOMING PETION [sic] FOR WRIT OF
> MANDAMUS TO GRANT SUMMARY JUDGMENT OR IN THE
> ALTERNATIVE SUMMARY ADJUDICATION FOR REMAND
> AND REVERSAL BASED ON ANDUNDISPUTED [sic]
> FACTS WHICH FACTS SUBSUME ALL MATTERS
> INCLUSIVE OF NINTH CIRCUIT R. 60(B) ORDER TO
> ADDRESS JURISDICTION, SEE ATTACHED RESPONSE
> TO FLAWED MAY 25, 2005 AND JUNE 1, 2005 ORDER
> [sic].

16

(Doc. 1608).

17
18
19
20
21

The continued evidentiary hearing was called on the Court's

calendar on June 20, 2005.  No appearance as made by the

Richardsons, no witnesses appeared, the Richardsons never

presented further testimony, and the Richardsons' motion for

relief from judgment was taken under submission.  (Doc. 1606).[4]

22

_____

23
24
25
26
27
28

[4]At the January 20, 2005 hearing, the Court advised Mrs.
Richardson of the requirements for subpoenaing witnesses under
Rule 45, Federal Rules of Civil Procedure.  The evidentiary
hearing was continued to March 18, 2005.  The March 18, 2005
hearing date was listed on the Court's minute order.  The
Richardsons' filings subsequent to the January 20, 2005 hearing
indicating that they did not know of the March 18, 2005 hearing
date and listing the hearing date as "March ??, 2005" on these
pleadings is unpersuasive given the record in this action.  In
any event, the March 18, 2005 hearing was continued by Court

12

III.   **LEGAL ANALYSIS**

A.   Governing Standards.

Rule 60(b), Federal Rules of Civil Procedure, provides:

> On motion and upon such terms as are just,
> the court may relieve a party ... from a
> final judgment ... for the following reasons:
> ... (3) fraud (whether heretofore denominated
> intrinsic or extrinsic), misrepresentation,
> or other misconduct of an adverse party; ...
> (6) any other reason justifying relief from
> the operation of the judgment.  The motion
> shall be made within a reasonable time, and
> for reason[] ... (3), not more than one year
> after the judgment ... was entered ....

To prevail on a Rule 60(b)(3) motion, "the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense."  *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir.), *cert. denied*, 531 U.S. 876 (2000).  "The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1405 (9th Cir.1987).  Rule 60(b)(3) requires "that fraud be proven by clear and convincing evidence, not be discoverable by due diligence before or during the proceeding, and be materially related to the submitted issue."  *Pacific & Arctic Ry. and Nav. Co. v. United Transp. Union,* 952 F.2d 1144, 1148 (9th Cir.1991).

Under prevailing Ninth Circuit law, Rule 60(b)(6) cannot be used to circumvent the requirements of the other five provisions

_____

Order because of an on-going jury trial and re-set and finally noticed for hearing on June 20, 2005.

of the Rule, particularly the time-bar provisions.  *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088-108989 (9th Cir. 2001), *cert. denied,* 534 U.S. 1079 (2002).  Rule 60(b)(6) "is not a substitute" for Rule 60(b)(3).  *See United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1050 (9th Cir. 1993).  "The long-standing rule in this circuit is that, 'clause (6) and the preceding clauses are mutually exclusive; a motion brought under clause (6) must be for some reason other than the five reasons preceding it under the rule.'"  *Lyon*, 252 F.3d at 1088-89 (quoting *Molloy v. Wilson*, 878 F.2d 313, 316 (9th Cir. 1989); citing *Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986)).  In addition, Rule 60(b)(6) is reserved for "extraordinary circumstances.'"  *Lafarge Conseils Et Etudes, S.A*.  *Id.*

    B.    <u>Merits of the Richardsons' Motion</u>.

    Doc. 1128, filed on November 6, 2001, is docketed as "Jury Notes."  Doc. 1128 is comprised of three separate pieces of paper.

    The first sheet of Doc. 1128 is a pre-printed form captioned "Note From The Jury" setting forth the name and number of the case, setting forth the time as 12:45 on November 1, 2001, stating that the jury has reached a unanimous verdict, and is signed by the foreperson.

    The second sheet of Doc. 1128 is a typewritten letter that states:

        October 22, 2001

        Honorable Judge Wanger

        We wish to thank you for following the trail

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> of the money.  It was hard for the investors
> to determine where the money was supposedly
> invested.  The trail led right to the
> Richardson's [sic] pocket.  During the trial
> we found that many of the laws were broken,
> and the Richardson's [sic] never acted in our
> interest.
>
> We ask your honor to use this evidence and
> turn it over to the proper authorities for
> the arrest and conviction of Darren Fife,
> Michael and Sammye Richardson and family.  We
> ask if there's some way to put a hold on the
> properties that really belong to the
> investors to prevent further destruction.
>
> Thank you.
>
> Marvin and Louise Chambers and Investors.

The letter contains handwritten signatures purporting to be those
of Michael Underwood, Shirley Underwood, and [indecipherable]
Underwood.

     The third sheet of Doc. 1128 is a pre-printed form captioned
"Note From The Jury", setting forth the time as 15:19 on October
31, 2001, stating "9 - Additional jury instruction & verdict
forms," and signed by the foreperson.

     The copy of Doc. 1128 attached to the Richardsons' motion,
(Doc. 1509), as an exhibit includes the following stamped
notation:

> I hereby attest and certify on 6/27/03 that
> the foregoing document is a full, true and
> correct copy of the original on file in my
> office and in my legal custody.
>
>                JACK L. WAGNER
>          CLERK, U.S. DISTRICT COURT
>          EASTERN DISTRICT OF CALIFORNIA
>
>           By pkelly Deputy
>                3 pgs.

Also attached to the Richardsons' motion is the Affidavit of
Sammye Richardson executed on June 30, 2004:

                              15

1.  On October 27, 2003 I received copies of the three pages attached hereto from the clerk of the United States District Court, Eastern District of California.

2.  The three pages were part of one document and I asked the clerk why this was the case.

3.  The clerk said that those three pages were delivered by the jury to the judge in the case.

The Richardsons contend that this letter was improperly given to the jury during trial or during its deliberations.  The Richardsons provide no evidentiary support for their allegation, i.e., no declaration or testimony was presented by any juror that this letter was viewed by any member of the jury either during trial or deliberations.  The hearsay statement attributed to "the clerk" was never corroborated.  The Richardsons never called "the clerk" as a witness.  The deputy clerk "pkelly" is not a courtroom deputy clerk and had no role in the trial.  Nor was "pkelly" ever present in the courtroom when notes from the jury were received or when the trial exhibits received in evidence were originally provided to the jury during deliberations by Mr. Lucas, the courtroom deputy.

The inclusion of such a letter as part of "Notes from the Jury" would violate seventeen years of courtroom practice and procedure in jury trials followed by the presiding judge.  When a jury begins its deliberations, the courtroom deputy prepares a sheet called "Note from the Jury."  Approximately five photocopies of this sheet are given to the jury so they can communicate with the Court.  No documents or exhibits are ever attached to the form when it is given to the jury.  When the jury concludes its deliberation, the Note(s) From the Jury are stapled

16

together by the courtroom deputy to become one document and are filed by the courtroom deputy.  No other documents become part of the "Notes From the Jury."  The filing of "Notes From the Jury" is then docketed in the official file of the case.  The document number is indicated in the left-lower corner of the document.  In this case, the Richardsons allege that this long-standing procedure was abandoned and a "letter" was filed along with these notes from the jury.

The letter was not marked as an exhibit.  This failure to mark a document to be provided the jury, as an exhibit would also violate seventeen years of court practice.  All items which become exhibits have attached to them an official court exhibit sticker, or may contain a handwritten "Exhibit ____" written on it.  This is normally located in the lower right-hand corner. All exhibits which are given to the jury are noted on a master exhibit list maintained by the courtroom deputy.  The actual exhibits are compared against the exhibit list before they are given to the jury for review.  All exhibits are delivered to the jury by the courtroom deputy after review for correctness by the parties or counsel.  The judge does not independently direct the delivery of any documents or items to the jury without the joint consent of the parties and/or their counsel.  In this case, the Richardsons allege that an exhibit was introduced to the jury without having been marked or recorded, without the knowledge and consent of the parties or their counsel, and without the knowledge of the judge or courtroom deputy.  The letter lacks any exhibit tag, filing date or docket number.  It was not included in the evidence presented to the jury.

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The inclusion of this letter defies not only all court policy and repeatedly followed trial practice, but also logic. The Richardsons allege that the judge engaged in "fraud" by giving this letter to the jury.  This is untrue.  The Richardsons presented no evidence that the judge did so.  The Richardsons then allege that the party who was allegedly engaged in this fraud would memorialize this alleged fraud in the court record by the filing this letter in conjunction with the jury verdict.  The presiding judge has never "given" an exhibit to this jury or any other jury.  In over one hundred jury trials, civil and criminal, the trial judge follows a regular practice: All trial exhibits are pre-marked with exhibit tags.  Any exhibit not on the Exhibit List that is offered at trial is marked for identification with an exhibit tag.  The courtroom deputy maintains physical custody of all exhibits, never the judge.  All exhibits received in evidence are entered daily in minutes kept by the courtroom deputy.  Before the exhibits received in evidence are delivered to the jury, the courtroom deputy reviews the exhibits with the parties and their attorneys and confirms that exhibits to be provided the jury have been received in evidence from the exhibit listings in the Court's minutes.  No exhibit that is not marked with an exhibit tag and is not received in evidence is delivered to the jury room.  The judge is never involved in providing exhibits to the jury.

Deputy clerk "pkelly" was never in the courtroom during the trial or jury deliberations and had no role in the trial.  The Richardsons provide no evidence or explanation indicating how the unidentified "clerk" in question would know what was or was not

18

given to the jury during its deliberations, as the only courtroom deputy throughout the trial was Mr. Lucas.

Courtroom Deputy Greg Lucas testified under oath at the September 13, 2004 evidentiary hearing.  Mr. Lucas, who was the Courtroom Deputy in charge of the jury trial in this action, testified that he followed standard court procedures regarding the marking and admission of exhibits and the provision of exhibits to the jury during deliberations.  Mr. Lucas testified that the letter was not marked as an exhibit, was not in evidence as a trial exhibit and, therefore, was not included in the exhibits provided to the jury during its deliberations.  Mr. Lucas testified that no other court employee provided exhibits to the jury.  Mr. Lucas further testified that he did not deliver the letter to the jury during its deliberations or at any other time and that he never had any conversation with any juror about the letter.  Mr. Lucas testified that the first time he ever saw the letter was when the Richardsons filed this motion.

At the January 20, 2005 evidentiary hearing, Brian Cuttone, a partner of the law firm Caswell, Bell & Hillison, LLP, testified. Mr. Cuttone and Caswell, Bell & Hillison represented Juliann Sanchez in this action.  Mr. Cuttone joined Caswell, Bell & Hillison in late August, 2000.  Mr. Cuttone testified that the first time he ever saw the October 22, 2001 letter was when Courtroom Deputy Lucas faxed a copy of it to him in approximately November, 2005.  He testified that he was not aware that the October 22, 2001 letter was included with Doc. 1128.  Mr. Cuttone testified that he had no conversations with Marvin Chambers prior to November 1, 2001.  Mr Cuttone's testimony is corroborated by

19

the unredacted billing records of Caswell, Bell & Hillison, filed under seal, in connection with that firm's representation of Juliann Sanchez in this action.[5]  Mr. Cuttone testified that Mr. Whittington never said to him that Marvin Chambers had taken a note to the jury and that Mr. Whittington never indicated to Mr. Cuttone that Mr. Whittington was aware of the October 22, 2001 letter.

In Docs. 1516-1522, Sammye Richardson asserted:

> 26.  Sammye Richardson alleges that the 'Note' was delivered to the Jury by clients of Caswell Bell and Hillison and Michael Ted Whittington and offers the attached Ex 'B' to prove that Mr. Brian Cuttone and Caswell Bell and Hillison has been charged with Document Tampering in Case No. 99-1715-A-11F Adv. 99-1534, Motion Control No., MTH-4.  The order dated February 12, 2001 was charged against his ex employer, but the docket will prove that it was the lead attorney handling the documents when they disappeared.  All evidence pointed to Mr. Cuttone who Law Office broke up after the charge as the perpetrator of the 'document controversy.'

> 27.  Ex. 'C' will prove that the same modus was used, with Judge Wanger's reference by Marvin Chambers to influence another judge, and another court to intercept a guilty verdict against Convicted Felon Peri Locklear.

> 28.  Mr. Chambers does not type and contends that Peri Elizabeth Locklear's mother typed

_____

[5]In Doc. 1568, the Richardsons object to the filing of Caswell, Bell & Hillison's unredacted billing records under seal. The Court orally ordered that the unredacted billing records be filed under seal at the January 20, 2005 hearing in order to substantiate Mr. Cuttone's testimony that he had not spoken with Mr. Chambers during the time frame questioned by Mrs. Richardson. The unredacted billing records substantiate Mr. Cuttone's testimony.  The Richardsons have made no evidentiary showing that any other aspect of the unredacted billing records is even remotely relevant to their Rule 60(b) motion.

1
2
3
4
5
6
7
8

> the document for him.  Movant disagrees.  The
> document appears to by prepared by an
> attorney pretending to be Marvin Chambers.
> The specific use of the word 'investors' and
> the layout of the October 22, 2001 document
> with 'during the trial we found out many Laws
> were broken' was not something Mr. Chambers
> wrote your honor, this was a document
> prepared by someone other than Mr. Chambers,
> someone with a license to practice law.  The
> question is not whether or not the 'Note' was
> distributed to the Jury; the question is
> whether a Mistrial should be declared or an
> Order given to set aside Judgment for Jury
> tampering.  We leave it in the hands of the
> court.

Exhibit B attached to Doc. 1516 is a copy of an "Order Fixing

Amount of Monetary Sanctions" issued by Judge Rimel on February

13, 2001 in *Joseph Guerriero, et al. v. Sales King International*,

Adversary Proceeding No. 00-1140, awarding monetary sanctions to

Joseph Guerriero, "payable jointly by Sales King International,

Inc., and its attorneys Forrest, Henderson, Sloan & Davis."

At the January 20, 2005 evidentiary hearing, Mr. Cuttone

testified that the Richardsons were referring to a Bankruptcy

Adversary Proceeding, *Guerriero v. Sales King International*.

Sales King International was represented by the law firm Forrest

and McLauglin (subsequently Forrest, Henderson, Sloan & Davis).

Prior to associating with Caswell, Bell & Hillison in late August

2000, Mr. Cuttone was employed by Forrest and McLauglin as a law

clerk and associate.  In early 2001, Bankruptcy Judge Rimel

granted monetary sanctions against Sales King International.  Mr.

Cuttone testified that he had no involvement in the controversy

which resulted in the sanctions order, which order was issued

after he had left Forrest and McLaughlin.  Mr. Cuttone testified

that he had never been sanctioned by the Bankruptcy Court for

21

document tampering.  The Richardsons presented no evidence in support of their contention that Mr. Cuttone had any involvement in the conduct sanctioned by the Bankruptcy Court.  The referenced bankruptcy case is unrelated to and has nothing to do with this case.

Robert Werth, previously a partner of Caswell, Bell & Hillison, until August 30, 2000, testified that he has never seen the October 22, 2001 letter.  He testified that Marvin and Louise Chambers were clients of Caswell, Bell & Hillison until sometime prior to the date Mr. Werth left the firm to join the State of California Fifth District Court of Appeal as a research attorney on September 1, 2000.  The docket in this action establishes that the representation of the Chambers by Mr. Werth and Caswell, Bell & Hillison terminated on July 27, 2000.  Mr. Werth testified that Caswell, Bell & Hillison represented members of the Underwood family in this action.  The docket in this action establishes that the representation by Mr. Werth and Caswell, Bell & Hillison of the Underwoods terminated on May 1, 2000.

Exhibit C to Doc. 1516 is a typewritten (including the signature) copy of a letter in an unrelated state case dated September 3, 2002:

> TO JUDGE OBERHOLSTER
>
> I HAVE KNOWN PERI LOCKLEAR SINCE 1995 AND HAS PROVEN TO BE A HARD WORKING PERSON.  SHE IS A PERSON OF HIGH CHARACTER AND THE TYPE OF PERSON A BUSINESS IS LOOKING FOR IF YOU WANT TO HIRE A RELIABLE PERSON. I ALSO HAVE KNOWN SAMMYE RICHARDSON AND WAS IN BUSINESS DEALINGS WITH THE RICHARDSONS SINCE 1995.  I HAD $360,000.00 STOLEN FROM MY WIFE & MYSELF. I HAVE TURNED IT OVER TO THE F.B.I. FOR THE PROSECUTION OF THE RICHARDSON'S.  MANY OTHER INVESTERS [sic] OF THE RICHARDSONS HAVE

22

JOINED MY CASE.  CHECK WITH JUDGE WANGER IN
FEDERAL COURT ABOUT THE CREDIBILITY OF SAMMYE
RICHARDSON IN FRESNO CA.  YOU CAN'T BELIEVE
ANYTHING SAMMYE RICHARDSON HAS TO SAY.  THE
F.B.I. AGENT IS MICHAEL J. MAHONEY AT 661-
323-9665.

THANK YOU

MARVIN & LOUISE CHAMBERS
5404 FAIRFAX ROAD
BAKERSFIELD CA 93306
PH 661-873-1422

The Richardsons did not call as witnesses Marvin or Louise Chambers or any of the Underwoods and did not present any evidence as to the author of the October 22, 2001 letter or the letter purporting to be from the Chambers to Judge Oberholster dated September 3, 2002.  The Richardsons did not present evidence from any of the jurors in this action that the October 22, 2001 letter was ever in the jury room or seen by any juror during the trial or deliberations.

The Richardsons have had unsupervised access in the District Court's Clerk's Office to the records for this case since this action was commenced.  The Richardsons regularly checked out and worked the case files in this case.  On each file, the parties are instructed: "DO NOT TAKE FILE APART."  In addition, the parties are warned: "UNAUTHORIZED REMOVAL, DESTRUCTION, MUTILATION OR OBLITERATION OF ANY FILE OR DOCUMENT FILED IN THE CUSTODY OF THE CLERK CONSTITUTES A FELONY UNDER TITLE 18, SECTION 2071 (a) OF THE U.S. CODE."  The letter in question is signed by three parties, all with the surname Underwood, who are not listed as the drafters of the letter.  Though dated October 22, 2001, the letter's language suggests that it was written after the completion of the trial proceedings and after the jury returned

23

its verdicts.  The documents in this disputed packet have been re-stapled and the holes punched in the documents do not align. Court policy prohibits the giving of such a letter to the jury. This policy has not been violated in this case, or at any other time.  This unexplained and unidentified document was never given to the jury in this case.  The Richardsons' "story" simply defies logic, is not supported by any evidence, and is contrary to the standard practices followed in every jury trial, including this jury trial, as Mr. Lucas testified.

At the September 13, 2004 hearing, Sammye Richardson questioned Courtroom Deputy Lucas as follows:

> Q.  Do you remember that there were documents all through the trial that were called 'Plaintiffs' Exhibits' that were not allowed to be entered under the exhibit numbers?
>
> A.  They might not have been admitted in evidence.  That's correct.
>
> Q.  But do you remember personally?
>
> A.  Oh, yes, I remember when the judge would rule that an exhibit could not be admitted.
>
> Q.  Do you remember that, in the end, all those documents that were called 'Plaintiffs' Exhibits,' and I forget, we had a series of, I think ours was 10 – 1,000 something.  I believe that was our serial number.
>
> Do you remember that our serial numbers, 1050, 1051, were referred to by the cross-plaintiffs' serial numbers?
>
> Or do you remember that we were not allowed to refer to our exhibits under our serial numbers, but under the adverse party's serial numbers?
>
> ...
>
> A.  If I understand you, if we had two exhibits that were the exact same, only one would be admitted, whether it was under Mr.

Cuttone's numbers or your numbers.

Q.  But you are not testifying that, in actuality, they were the same?

A.  Then I must misunderstand your question.

Q.  If the same document is called 'Exhibit A' - or let's assume, same document is 1051 by our exhibit number, the plaintiffs' exhibit number.  And the same document, or assumedly the same document is referred to as Exhibit 576, offered by the cross-plaintiff Juliann Sanchez.  Is it your position that if it's the same document, and you are assuming it's the same document, Juliann Sanchez's exhibit would go in as opposed to the exhibit that was referred to by the plaintiffs' 1051 or 1050 exhibit number?

A.  No, I believe whoever moved it in first, that's the one that moved in.  If the second one came along and it was a duplicate of one that was already admitted, the second one wouldn't be admitted.

Q.  Would you be surprised that that contradicts the Court's records?

A.  I can't say one way or the other whether it does or not.

Q.  If the first page of a document is the same, marked the same, second page is the same, offered by the adverse party and offered by us, but the third page that we have had a signature and maybe it's date-stamped, making it a verified document, whereas the document entered by the adverse party is missing those elements, would you call them the same document?

MS. TIMKEN: Your Honor, I hesitate to interrupt this, but I have to object on First American's behalf that with respect to this last question, it's unintelligible, it's an incomplete hypothetical to a witness who is not testifying as an expert witness, and the subject matter of the question is well beyond the relevant scope of direct examination and the very purpose for which we are here, which is to determine whether this one single document went to the jury room or not.

THE COURT: All right.  I think we are getting

25

1

afield, but to the extent, if Mr. Lucas
understands it, I will let him answer this
question, but then I think we need to go on

2

to a different subject.

3

If you understand the question, you may
answer it, Mr. Lucas.

4

5

THE WITNESS: I believe I do.

6

If it's not exactly the same, it's two
different documents.

7

MS. RICHARDSON: Thank you, your Honor.  My
reason to take Mr. Lucas back to these

8

questions was that he established that there
is a pattern followed in this Court.

9

10

And my offering by that line of questioning
is very relevant to the issue at hand, that
single document.  That in fact, in this

11

court, and if I pull back myself and take
myself away from the state of mind I was in

12

on November 1st and bring myself to the state
of mind I am in to September 13, 2004, is

13

vastly different.

14

So I need to take Mr. Lucas to the state of
mind that everyone was on [sic] on the date

15

of November 1st and when the documents were
being carried.

16

17

And my line of questioning then proves, your
Honor, that in fact in our case, there was no
standard procedure applied.

18

19

THE COURT: All right.  That's an argument,
Mrs. Richardson, that you can present.  But

20

do you have any more questions of Mr. Lucas?

21

...

22

BY MRS. RICHARDSON:

23

Q.  Mr. Lucas, all I want on the record from
you is, on that day, did you put in all the
documents that the plaintiffs had been trying

24

to offer into evidence as plaintiffs'
exhibits?

25

26

...

27

THE WITNESS: The exhibits that went to the
jury room were those that were admitted into
evidence by the Court.  That was not

28

1
2

        necessarily everything the plaintiffs wanted
        in evidence, but that's what was admitted in
        evidence.

3

        BY MRS. RICHARDSON:

4
5

        Q.  Mr. Lucas, when you took the plaintiffs'
        boxes to the jury room, were they already
        deliberating?

6

        A.  Yes.

7

(Doc. 1523, RT 42:8 - 47:6).   In a pleading captioned "NOTICE

8

MOTION AND CERTIFICATE OF GOOD FAITH" filed on October 21, 2004

9

(Doc. 1532), the Richardsons asserted for the first time:

10
11
12
13
14

        The court is duty bound to address Cross-
        claimant Juliann Sanchez's exhibit 1050 and
        1051, in relationship to Plaintiff Exhibit
        27000 and 27001 in this hearing.  As
        Plaintiff can proof beyond the preponderance
        of the evidence that the Ex. 1050 and 1051
        were pulled out of Richardson's trash can by
        Locklear, altered with the help of defendants
        and Sanchez and presented to the Jury.

15

The Richardsons repeated this assertion in Doc. 1536.  In Docs.

16

1537-1538, the Richardsons contended:

17
18
19

        6.  Court take Judicial Notice of Entry of
        Ex. 1050 and 1051 series by Sanchez in lieu
        of Ex. 27000 and 27001 series etc. of
        Richardson's [sic] was judicial error and Ex.
        1050 and 1051 series must be expunged or be
        part and parcel of the evidentiary hearing.

20

*See also* Doc. 1541.  In Doc. 1543, the Richardsons asserted:

21
22
23
24

        (5a) Both Jan. 5, 2001, Nov. 27, 2004
        injunctions and the post hearing Order of
        March 5, 2002 were resultant implications of
        evidence tampering as in Sanchez <u>altered Ex.</u>
        <u>1051 and 1050</u> offered on record in lieu of
        Richardson <u>Verified Ex. 27000 or 27001</u>.

25
26
27
28

    At the January 20, 2005 evidentiary hearing, Mrs. Richardson

asserted that Exhibits 1050 and 1051 were altered during the

trial and that Peri Locklear stole interrogatories from the

Richardsons' trash can after being asked to do so by Juliann

27

Sanchez.  Mrs. Richardson further represented that they had raised this claim in the Rule 60(b) motion filed by them in the Ninth Circuit.  No admissible evidence was offered to support these assertions.

The Court has reviewed the Richardsons' filings in the Ninth Circuit relative to the Rule 60(b) motion that were also filed with this court.  There is absolutely no mention in these Ninth Circuit filings that Exhibits 1050 and 1051 were altered by anyone.  There is no evidence that the exhibits were altered by anyone.  Mrs. Richardson asked no questions of either Mr. Cuttone or Mr. Werth about the alleged alteration of Exhibits 1050 and 1051 at the January 20, 2005 evidentiary hearing and has otherwise presented no evidentiary support for her contentions.  The Richardsons did not call Ms. Sanchez or anyone else as a witness to establish any foundation for the assertion that Exhibits 1050 or 1051 were altered in any way.  Further, the Richardsons present no evidence or argument why this alleged alteration was not raised during trial.[6]

_____

[6]The Richardsons suggest a sinister motive for the fact that the November 1, 2001 Order, (Doc. 1129), denying the motion for entry of default against Rock of Gibralter, LLC, and denying dismissal of Rock of Gibralter, LLC, was not "scanned" by the Clerk's Office when the Order was filed and served.  This contention is without merit.  The Order was placed in the official court file, assigned a document number, and served on all parties, as evidenced by the clerk's certificate of service.
The Richardsons further complain that the form Notes from the Jury used in this action stated the case number as "CR F-98-5393 OWW."  This was obviously a typographical error on the part of Court staff, as the case is a civil case and its number is "CV-F-98-5393."  The typographical error is of no consequence.
The Richardsons argue that Mr. Lucas' testimony that the jury had already started its deliberations when he gave the jury

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.   The Richardsons' Rule 60(b) Motion is Untimely**.

Even if the grounds upon which the Richardsons seek relief from the Judgment had merit, which they do not, their Rule 60(b) motion is untimely.

Pursuant to Rule 60(b), the Richardsons' "motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."  The Richardsons acknowledge their failure to satisfy the statute of limitation requirements set forth in Rule 60(b): "[t]he first time [they] saw the writing was more than one year after the final judgment was enter and as they were getting ready to appeal."  Richardsons' Motion at 2:1-5; *see also* July 12, 2004 Lodging.

The Richardsons' motion exceeds the "reasonableness" requirement for filing under Rule 60(b)(6).

Rule 60(b)(6) is a provision the Ninth Circuit Court of Appeals uses "sparingly and as an equitable remedy to prevent manifest injustice."  *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).  Under Rule 60(b)(6),

---

the exhibits in this action is evidence of fraud.  It is the standard practice of the Court, when dealing with a voluminous number of exhibits, as was the case here, to send the exhibits to a jury after the jury has been excused and left the courtroom to begin deliberations.  The exhibits are never delivered to the jury room in advance of jury deliberations.

At the January 20, 2005 hearing, Mrs. Richardson asked both Mr. Cuttone and Mr. Werth questions concerning alleged payments to their clients to bring lawsuits against the Richardsons.  Both Mr. Cuttone and Mr. Werth denied any such payments had been made. The Richardsons have presented no evidence to support their questions and did not call any witness or provide any evidence to substantiate these allegations.

29

1
2
3
4
5

relief is granted when "extraordinary circumstances prevented [petitioner(s)] from taking timely action to prevent or correct an erroneous judgment." *Greenawalt v. Stewart*, 105 F.3d 1268, 1273 (9th Cir. 1997) (citations and quotation marks omitted); *see also Ackermann v. United States*, 340 U.S. 193, 200-02 (1950).

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

     The Richardsons fail to provide a clear record of when they received notice of the letter in question or proper copies of the court documents they file, complete with docket numbers and filing dates.  The Richardsons' trial began on August 28, 2001. The copy of the letter which the Richardsons' submit contains no filing date or exhibit tab; however, the letter itself is dated October 22, 2001.  Richardsons' Motion at Ex. A, 3.  Jury instructions were filed and read to the Jury on October 23, 2001. *See* Docs. 1114-15.  The Richardsons filed a notice of their intent to appeal the jury's final judgment on March 5, 2002, more than two years prior to June 25, 2004, which they elsewhere claim as the date on which they received notice of this letter.  If the letter was in the public court file, it was available for the Richardsons and anyone to view from November 6, 2001, the date the "Notes From the Jury" were filed.

21
22
23
24
25
26
27
28

     Under the Richardsons own allegations, their motion is untimely.  The Richardsons seek relief on the basis of a "[p]rivate note [allegedly given] to [the j]ury by Marvin Chambers," which the Richardsons claim to have discovered on June 25, 2004.  *Id.* at 3.  This is contradicted by paragraph 1 of Mrs. Richardson's declaration of June 30, 2004 that she received the letter from the clerk on October 27, 2003.  The Richardsons themselves also allege, however, that this letter has been part

of the record since at least November 6, 2001, when the "Note(s) from the Jury" were filed.  *See* Doc. 1128.  The Richardsons have continuously accessed the case files in the Clerk's Office. Therefore, under the Richardsons' version of this "story," they have had notice of this letter since November 6, 2001, and not October 27, 2003 or June 25, 2004 as they allege.  If this letter was filed as the Richardsons allege, they have had notice of it since the November 6, 2001 filing date, and the letter cannot be classified as "newly discovered evidence."  Fed. R. Civ. P. 60(b).  As a result, the Richardsons' motion based on this letter is untimely.

The Richardsons submit contradictory accounts of when they received notice.  The stamp on the letter, from the time when the clerk of the court made a "true and correct copy of the original on file," is dated June 27, 2003. Richardsons' Motion at Ex. B. As already noted, the Richardsons also allege they received notice on a different date: June 25, 2004.  Sammye A. Richardson alleges a third date for the first time in her sworn affidavit: October 27, 2003.  Richardsons' Motion at Ex. B.

The stamp on the copied files in question indicates that the Richardsons have had knowledge of this document since at least June 27, 2003.  Even taking this date, and not November 6, 2001, as their date of notice, the Richardsons still do not satisfy the one year filing requirement.  The Richardsons attempted to lodge a motion for relief July 12, 2004.  Their motion was actually filed August 13, 2004.  Both of these dates are more than one year after the date on which the Richardsons allege they received a copy of the letter in question.

31

The statute of limitations for a Rule 60(b)(3) motion is one year.  The Richardsons offer no explanation for their failure to file this motion within one year of the time this letter was allegedly made part of the public record (i.e., November 6, 2001).  They have had actual knowledge of the existence of the letter and never brought it to the Court's attention. The Richardsons offer no explanation for their failure to file this motion within one year of the time they allegedly received a copy of this letter from the clerk of the court (i.e., October 27, 2003).  The Richardsons do not attempt to provide "extraordinary circumstances [which] prevented [them] from taking timely action to prevent or correct an erroneous judgment."  The Richardsons have not provided any evidence why their untimely filing was reasonable.

The same conclusion is reached with regard to the Richardsons' contention that Exhibits 1050 and 1051 were altered. These exhibits were admitted into evidence during the jury trial. The Richardsons had full opportunity to view those exhibits at trial before they were admitted into evidence, and, after the trial when they prepared their appeal, and could have compared them with their exhibits marked 27000 and 27001.

## IV.   CONCLUSION

For the reasons stated:

1. The Richardsons' motion for Rule 60(b) relief from judgment (Doc. 1509) is DENIED.

2.   In this case, final judgment was entered, all appeals exhausted, and the case closed long ago.  No further pleadings by Michael A. Richardson and/or Sammye A. Richardson in connection

32

with their Rule 60(b) motion shall be accepted for filing by the Clerk of the Court and the Clerk of the Court is directed to return any such filings to the Richardsons.

IT IS SO ORDERED.

Dated:    **September 23, 2008**              **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

33